UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DYLAN TOMPKINS-HOLMES,

      Plaintiff,

v.                                        Case No. 8:17-cv-52-T-33AEP

ROBERT GUALTIERI, in his
Capacity as Sheriff of Pinellas
County, Florida, and TIMOTHY
VIRDEN, individually,

      Defendants.
_____/

**ORDER**

     This matter comes before the Court pursuant to Defendants Sheriff Robert Gualtieri's Motion to Dismiss (Doc. # 10), and Deputy Timothy Virden's Motion to Dismiss or for More Definite Statement (Doc. # 11), both filed on January 13, 2017. Tompkins-Holmes filed responses on January 26 and 30, 2017. (Doc. ## 14, 16). For the reasons that follow, the Motions are denied.

I.   **Background**

     On December 30, 2015, Plaintiff Dylan Tompkins-Holmes was a passenger in a car driven by his girlfriend after the couple had spent the evening in John's Pass Village in Madeira Beach. (Doc. # 2 at ¶¶ 42-43). Deputy Randall of the Pinellas

County Sheriff's Office and his trainee, Deputy James Blount
— who are not parties in this action — pulled the car over
because they suspected the driver was under the influence.
(Id. at ¶ 45). While Deputies Randall and Blount were speaking
with Tompkins-Holmes's girlfriend, Deputy Virden arrived on
the scene and approached the passenger side of the car where
Tompkins-Holmes was seated. (Id. at ¶ 48). Tompkins-Holmes
advised his girlfriend she could refuse to take the field
sobriety tests that the other deputies asked her to perform,
which "angered Deputy Virden who demanded that Tompkins-
Holmes stop instructing [her]." (Id.). When Tompkins-Holmes
did not stop, "Deputy Virden aimed his Taser at Tompkins-
Holmes, forcefully pulled him from the car, manhandled him
against the vehicle, and handcuffed [Tompkins-Holmes's] hands
behind his back." (Id. at ¶ 49).

As Deputy Virden was transferring Tompkins-Holmes into
the backseat of Deputy Virden's vehicle, Tompkins-Holmes
verbally protested and "question[ed] [Deputy Virden's]
manhood," but "at no time did Tompkins-Holmes pose any threat,
attempt to flee, or physically resist arrest." (Id. at ¶¶ 50-
52). At this point, Deputy Virden threateningly told Tompkins-
Holmes to "keep going," and then fired two shots from his
pistol into Tompkins-Holmes's abdomen and hip. (Id. at ¶ 52).

Although Tompkins-Holmes was handcuffed and wedged in the backseat of Deputy Virden's vehicle at the time, Deputy Virden initially claimed that Tompkins-Holmes had reached for his gun. (Id. at ¶¶ 28-29, 53-54). Later, Deputy Virden justified his use of force by stating that he perceived that Tompkins-Holmes could have kicked him, and thus force was necessary. (Id. at ¶ 54). Deputy Randall told investigators that he believed that "Deputy Virden had mistaken his previously drawn Taser for his pistol" and intended to Taser Tompkins-Holmes, rather than shoot him. (Doc. # 2 at ¶¶ 58-59).

Although there was no video of the incident, an inadvertently-made audio recording revealed that Tompkins-Holmes had not physically resisted Deputy Virden, as the deputy initially claimed. (Id. at ¶¶ 28-29, 53). Immediately after the shooting, Deputy Virden can be heard asking Deputy Randall if he had seen Tompkins-Holmes reaching for his gun, to which Deputy Randall responded "No." (Id. at ¶ 53). After reviewing the audiotape, the state attorney charged Deputy Virden with attempted manslaughter on January 28, 2016. (Id. at ¶ 30).

Tompkins-Holmes, who survived the shooting, alleges that Deputy Virden's use of force was excessive and caused by Sheriff Gualtieri's customs and policies, including:

3

(1) aggressive community policing resulting in excessive uses of force by deputies, (2) a deliberate policy to not have deputies utilize body-worn cameras to video record interactions with citizens despite the knowledge that body-worn cameras deter incidents of excessive force, and (3) a lack of training or inadequate training of deputies.

(Id. at ¶ 4).

On December 8, 2016, Tompkins-Holmes filed his Complaint in state court, bringing five counts: (1) a 42 U.S.C. § 1983 claim against Sheriff Gualtieri in his official capacity for maintaining a policy and practice of excessive force; (2) a § 1983 claim against Sheriff Gualtieri in his official capacity for the failure to properly train and supervise deputies; (3) a § 1983 excessive force claim against Deputy Virden in his individual capacity; (4) a state law battery claim against Sheriff Gualtieri in his official capacity; and (5) a state law negligence claim against Sheriff Gualtieri in his official capacity. (Doc. # 2). On January 6, 2017, Sheriff Gualtieri and Deputy Virden removed the case to this Court. (Doc. # 1).

Subsequently, Sheriff Gualtieri and Deputy Virden filed the instant Motions to Dismiss on January 13, 2017, (Doc. ## 10-11), to which Tompkins-Holmes has responded (Doc. ## 14, 16). The Motions are ripe for review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

5

### III. <u>Analysis</u>

#### A.   <u>Shotgun Pleading</u>

Both Deputy Virden and Sheriff Gualtieri contend that
the Complaint is an impermissible shotgun pleading. The
Eleventh Circuit has described four varieties of shotgun
complaints: (1) "a complaint containing multiple counts where
each count adopts the allegations of all preceding counts";
(2) a complaint that is "replete with conclusory, vague, and
immaterial facts not obviously connected to any particular
cause of action"; (3) a complaint that does "not separat[e]
into a different count each cause of action or claim for
relief"; and (4) a complaint that "assert[s] multiple claims
against multiple defendants without specifying which of the
defendants are responsible for which acts or omissions, or
which of the defendants the claim is brought against." <u>Weiland
v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1322-23
(11th Cir. 2015). "The unifying characteristic of all types
of shotgun pleadings is that they fail to . . . give the
defendants adequate notice of the claims against them and the
grounds upon which each claim rests." <u>Id.</u> at 1323.

Deputy Virden and Sheriff Gualtieri argue that the
Complaint is the first type of shotgun pleading because the
first sixty paragraphs are incorporated into each of the five

counts. But, the first sixty paragraphs of the Complaint are general factual and jurisdictional allegations. (Doc. # 2 at ¶¶ 1-60). Each separate *count* is not rolled into the next, and, thus, the Complaint is not the first type of shotgun pleading. See Weiland, 792 F.3d at 1324 (holding that complaint re-alleging its first forty-nine paragraphs in each count was not a shotgun pleading because "[t]he allegations of each count are not rolled into every successive count on down the line").

Still, Deputy Virden and Sheriff Gualtieri complain that only factual allegations relevant to each specific claim should be incorporated into each count. While the general allegations are long and it may be a better practice to incorporate only specific factual allegations into each count, it is clear from reading the allegations which acts each Defendant is alleged to have committed. See Id. ("[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count"). Tompkins-Holmes alleges that Deputy Virden fired two shots into his abdomen and hip at close range even though Tompkins-Holmes was handcuffed and did not physically resist. He likewise complains that Sheriff

Gualtieri maintained a custom or policy of excessive force and inadequate training that allowed this incident to occur. Therefore, the Complaint gives Deputy Virden and Sheriff Gualtieri adequate notice of the claims against them and is not an impermissible shotgun pleading.

For the same reason, Deputy Virden's request that the Court grant his alternative Motion for More Definite Statement is denied. Under Federal Rule of Civil Procedure 12(e),

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

Fed. R. Civ. P. 12(e). "The federal system employs notice pleading and therefore, motions for more definite statement are disfavored." Dobruck v. Borders, No. 8:16-cv-1869-T-33JSS, 2016 WL 5391395, at *4 (M.D. Fla. Sept. 27, 2016)(quoting Lucibello v. Gulf Coast Energy, L.L.C., No. 2:05-cv-274-FTM-33DNF, 2005 WL 5954963, at *3 (M.D. Fla. Sept. 19, 2005)). "The basis for granting a motion for more definite statement is unintelligibility, not lack of detail; as long as the defendant is able to respond, even if only with simple denial, in good faith, without prejudice, the complaint is deemed sufficient." SEC v. Dig. Lightwave, Inc., 196 F.R.D. 698, 700 (M.D. Fla. 2000). The Court finds that the

Complaint's detailed allegations regarding Deputy Virden's shooting of Tompkins-Holmes are not "so vague or ambiguous" that Deputy Virden could not reasonably frame a responsive pleading to the excessive force claim.

### B. __Deputy Virden__

Deputy Virden argues that Count III, a claim for excessive force brought under § 1983, should be dismissed because he is entitled to qualified immunity. (Doc. # 11 at 3). Tompkins-Holmes retorts that Deputy Virden is not entitled to qualified immunity because "no reasonable officer could have believed that shooting a handcuffed, unarmed suspect who poses no risk was permissible." (Doc. # 14 at 6).

"Qualified immunity offers protection for government officials, acting within their discretionary authority, who are sued in their individual capacities as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Collier v. Dickinson, 477 F.3d 1306, 1308 (11th Cir. 2007)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The parties do not appear to dispute that Deputy Virden was acting within his discretionary authority at the time of the incident. See (Doc. # 11 at 4-5; Doc. # 14 at 3).

Concerning the existence of a constitutional violation, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)(citation omitted). Determining whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the "nature of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interest at stake." Jackson v. Sauls, 206 F.3d 1156, 1170-71 (11th Cir. 2000)(citations omitted). The application of this test requires:

> [C]areful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.

Graham v. Connor, 490 U.S. 386, 396 (1989). In turn, "[u]se of force, must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)(quoting Graham, 490 U.S. at 396). Further, evaluating the reasonableness of the force used requires allowing for "the fact that police

officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97. But, taking the allegation that Deputy Virden twice shot an unarmed, handcuffed man, who was not physically resisting, in the backseat of a patrol vehicle as true, the Complaint sufficiently alleges a violation of Tompkins-Holmes's Fourth Amendment rights. Cf. Vinyard v. Wilson, 311 F.3d 1340, 1349 (11th Cir. 2002)(finding a Fourth Amendment violation where an officer pepper sprayed an arrestee who was "under arrest for offenses of minor severity, handcuffed, secured in the back of a patrol car, and posing no threat to [the officer], herself or the public").

The next question is whether that right was "clearly established" – that is, whether "in light of preexisting law, the unlawfulness of the official's conduct is 'apparent.'" Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005)(citations omitted). Thus, an official is entitled to qualified immunity unless the official has fair warning that his conduct is unlawful. Id. The Eleventh Circuit has identified three categories of fair warning:

> First, . . . whether the federal statute or
> constitutional provision is so clear, and the
> conduct is so bad, that it precludes qualified
> immunity even in the total absence of case law.
> Second, if the conduct is not bad enough that it
> violates a constitutional provision on its face, [a
> court] look[s] to case law that can be applied
> broadly to a number of factual situations. Third,
> and finally, if no broad case law is applicable,
> [the court] turns to case law precedent that is
> tied to the facts.

Kesinger v. Herrington, 381 F.3d 1243, 1250 n.6 (11th Cir.
2004).

As stated by the Eleventh Circuit, "For qualified
immunity to be surrendered, pre-existing law must dictate,
that is, truly compel (not just suggest or allow or raise a
question about), the conclusion for every like-situated,
reasonable government agent that what the defendant is doing
violates federal law in the circumstances." Lassiter v. Ala.
A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994). The Eleventh
Circuit has warned that "courts must not permit plaintiffs to
discharge their burden by referring to general rules and to
the violation of 'abstract rights.'" Id.; Hunter v. City of
Warner Robins, Ga., 842 F. Supp. 1460, 1469 (M.D. Ga.
1994)("Unless it can be said that the state of the law was of
such clarity that a reasonable official should have been on
notice that his or her challenged conduct was unlawful, that
official is entitled to qualified immunity.").

At this stage, where the Court is required to take the Complaint's allegations as true, Tompkins-Holmes has alleged a violation of clearly established law. As the Eleventh Circuit has previously held that pepper spraying a handcuffed, unarmed arrestee who was not resisting in the back of a patrol vehicle qualifies as excessive force, it was clearly established at the time of Tompkins-Holmes's shooting that twice shooting a similarly handcuffed, unarmed arrestee who was not physically resisting while in the backseat of a patrol vehicle is an excessive use of force. See Vinyard, 311 F.3d at 1348-49 ("Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."); see also Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008)("The court found that Officer Ortivero punched Hadley in the stomach while he was handcuffed and not struggling or resisting. Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.").

Therefore, for the purposes of the pending Motion to Dismiss, Tompkins-Holmes has sufficiently alleged facts to carry his burden of showing that Deputy Virden is not entitled

13

to qualified immunity. <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004)(noting that it is the plaintiff's burden "to show that the defendant is *not* entitled to qualified immunity" (emphasis original)). Count III survives dismissal and Deputy Virden's Motion to Dismiss is denied.

### C.   <u>Sheriff Gualtieri</u>

#### 1.   <u>Monnell Claims</u>

Counts I and II of the Complaint bring § 1983 claims against Sheriff Gualtieri in his official capacity. In Count I, Tompkins-Holmes contends that Sheriff Gualtieri maintained a custom or policy "of condoning [] deputies' use of aggressive and excessive force without lawful justification and the deliberate policy to not have deputies utilize body-worn cameras which would video record deputies' interactions with citizens." (Doc. # 2 at ¶ 63). In Count II, he alleges that Sheriff Gualtieri failed "to properly train, supervise, oversee, and control his deputies," which "amount[s] to a deliberate indifference to the rights of the persons with whom the [] deputies come in contact." (<u>Id.</u> at ¶ 74).

It is well-established that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520

U.S. 397, 403 (1997). Rather, to recover damages from the Sheriff under § 1983, Tompkins-Holmes must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004)(citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

The Court has determined that the Complaint sufficiently pleads a constitutional violation: that Deputy Virden used excessive force on Tompkins-Holmes in violation of Tompkins-Holmes's Fourth Amendment rights. Therefore, the issue is whether Tompkins-Holmes has sufficiently alleged a custom or policy perpetuated by Sheriff Gualtieri.

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a particular municipal "policy" or "custom" that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 403.

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.

15

Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999)(quoting

Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir.

1997)); see also Griffin v. City of Opa-Locka, 261 F.3d 1295,

1307 (11th Cir. 2001). Tompkins-Holmes must show that Sheriff

Gualtieri's policy or custom was the "moving force" that

caused the constitutional violation in order to establish

Sheriff Gualtieri's § 1983 liability. McElligott v. Foley,

182 F.3d 1248, 1259 (11th Cir. 1999); Young v. City of

Augusta, GA., 59 F.3d 1160, 1171 (11th Cir. 1995).

Regarding Count I, Sheriff Gualtieri argues that the

other incidents of excessive force identified by Tompkins-

Holmes in his Complaint are not sufficiently similar to the

shooting of Tompkins-Holmes to establish a policy or custom

of excessive force. (Doc. # 10 at 11). Sheriff Gualtieri

claims that the other incidents occurred in Pinellas County

jails rather than during traffic stops like the one during

which Tompkins-Holmes was shot. (Id.). Even if a pervasive

use of excessive force by deputies in county jails could not

support that Sheriff Gualtieri encouraged his deputies to use

excessive force generally, it is not clear from the wording

of the Complaint that all the incidents enumerated occurred

in jail. Tompkins-Holmes states, without indicating the

location of the incidents, that "[d]eputies recently

16

responded to a call for medical help for a Navy veteran with post-traumatic stress disorder and while taking him into custody Tasered him so excessively that he died" and a "deputy was found to have used excessive force by dragging a defenseless wheelchair-bound man to the ground by the neck and striking him with his fist and knees." (Doc. # 2 at ¶ 17(A), (E)). Furthermore, Tompkins-Holmes alleges:

> Plaintiff has received multiple reports (anonymous or requested to be kept anonymous) regarding Deputy Virden and other deputies using excessive force under similar circumstances which suggests a pattern of misconduct. One report included the allegation that a citizen was excessively manhandled for telling another person not to submit to DUI testing.

(Id. at ¶ 81 n.7). Taking these allegations as true, Tompkins-Holmes has plausibly alleged a pattern of similar conduct that may be explored further during discovery.

To be sure, most of the cases emphasizing the importance of similar incidents cited by Sheriff Gualtieri were decided at the summary judgment stage, after the plaintiffs had the benefit of discovery to establish a pattern of similar incidents. See, e.g., Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005)(affirming summary judgment for City because "[d]uring discovery, [plaintiff] was given a list of all cases involving excessive force, but he cannot

17

show that any of them involved factual situations that are substantially similar to the case at hand"); McDowell v. Brown, 392 F.3d 1283, 1290-91 (11th Cir. 2004)("Simply put, this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy of understaffing the Jail so as to delay the transfer of inmates to Grady."); MacMillan v. Roddenberry, No. 5:08-cv-351-Oc-10GRJ, 2010 WL 668281, at *3 (M.D. Fla. Feb. 19, 2010), aff'd, 432 F. App'x 890 (11th Cir. 2011)(granting summary judgment for sheriff where "none of the complaints [of other excessive force incidents] presented here involved factual situations that are substantially similar to the case at hand").

Tompkins-Holmes also asserts that Sheriff Gualtieri's attitude towards body-worn cameras, including the Sheriff's refusal to use them because they are "insulting," is evidence that the Sheriff customarily avoided monitoring of his deputies' use of force. (Id. at ¶¶ 18-19). Indeed, according to Tompkins-Holmes, the audio-recording that belied Deputy Virden's version of the shooting was inadvertently-made, because another deputy on the scene had intentionally turned off the video camera in the patrol vehicle but unintentionally left on the audio recording aspect of the device before the

incident. (Id. at ¶¶ 13, 28). While additional evidence and a higher degree of similarity between incidents may be required to ultimately prove a custom or policy, the allegations in the Complaint that Sheriff Gualtieri maintained a policy of employing excessive force, and of avoiding recordings of deputies to facilitate that use of force, go sufficiently beyond legal conclusions.

At the motion to dismiss stage, the Court finds that Tompkins-Holmes has sufficiently pled a purported custom or policy of excessive force by Sheriff Gualtieri. See Holder v. Gualtieri, No. 8:14-cv-3052-T-33JSS, 2015 WL 4079844, at *4 (M.D. Fla. July 6, 2015)("While the Sheriff contends that no facts have been asserted to sustain a claim under section 1983 municipal liability, the Court finds that Holder has satisfied his burden, at this stage, of alleging a custom or usage with force of law."). If these allegations are established, Tompkins-Holmes will have shown that Sheriff Gualtieri maintained a custom sufficient to create municipal liability. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985)("The complaint states that the City of Cooper City has a custom of allowing the use of excessive force. If established, this allegation provides the

requisite fault on the part of the City . . . thereby establishing a 'custom' within the meaning of <u>Monell</u>.").

Regarding the failure to train claim, Count II, Tompkins-Holmes has also sufficiently pled that Sheriff Gualtieri failed to train his deputies, leading to the use of excessive force against Tompkins-Holmes. An inadequate training program can be the basis for § 1983 liability in limited circumstances where the municipality adhered to an approach that failed to prevent tortious conduct by employees. <u>Bd. of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 407 (citing <u>City of Canton</u>, 489 U.S. at 387–390). "A pattern of tortious conduct by employees can show that the lack of proper training constituted the 'moving force' behind the plaintiff's alleged injury." <u>Miller v. City of Tampa</u>, No. 8:10-cv-487-T-33EAJ, 2011 WL 2631974, at *2 (M.D. Fla. July 5, 2011)(citing <u>Bd. of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 407–408; <u>Lewis v. City of W. Palm Beach, Fla.</u>, 561 F.3d 1288 (11th Cir. 2009)).

Here, Tompkins-Holmes has alleged numerous incidents of excessive force, supposedly caused by inadequate training on the use of force. (Doc. # 2 at ¶ 17, 78, 80). Tompkins-Holmes also contends that Deputy Virden was emotionally unstable and known to use his Taser unnecessarily, but was not corrected by Sheriff Gualtieri. (<u>Id.</u> at ¶¶ 55, 57). Furthermore,

Tompkins-Holmes asserts that Sheriff Gualtieri's refusal to record deputies with body-worn cameras supports that Sheriff Gualtieri was deliberately indifferent to citizens' constitutional rights. (Id. at ¶ 81). At this juncture, Tompkins-Holmes's allegations regarding Sheriff Gualtieri's failure to train sufficiently state a claim.

## 2.   **State Tort Claims**

Counts VI and V bring state tort claims for battery and negligence against Sheriff Gualtieri in his official capacity. Sheriff Gualtieri argues that these claims should be dismissed because he has sovereign immunity over the battery claim and the negligence claim fails (1) to state a cognizable claim and (2) to identify either a duty he owed to Tompkins-Holmes or a breach of that duty. (Doc. # 10 at 13-14).

Regarding the battery claim, Count IV, section 768.28(9), Fla. Stat., states in part:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Sheriff Gualtieri argues that "[s]hooting a handcuffed subject who is not resisting in any

21

way in anger because he challenged the officer's manhood is the very definition of the kind of conduct 'exhibiting wanton and willful disregard of human rights, safety, or property,'" so that the Court can determine that Sheriff Gualtieri is immune to the negligence claim as a matter of law. (Doc. # 10 at 15).

But, as Tompkins-Holmes notes, the Complaint states: "Deputy Virden's conduct was intentional, but was not willful, wanton, or malicious." (Doc. # 2 at ¶ 97). Although the Court is not required to accept legal conclusions as true, it is plausible that Deputy Virden did not act with malice when he removed Tompkins-Holmes from the car, manhandled and handcuffed him, and subsequently shot him. "Florida courts have recognized a distinction between 'intentional' torts and those torts that are done with bad faith, malicious purpose, or willful or wanton disregard of human rights, safety, or property." Smith-Grimes v. City of W. Palm Beach, No. 11-81201-CIV, 2013 WL 594018, at *4 n.2 (S.D. Fla. Feb. 14, 2013)(citing Richardson v. City of Pompano Beach, 511 So.2d 1121, 1122 (4th DCA 1987)).

It is best left for the fact-finder to determine whether Deputy Virden acted in bad faith, with malicious purpose, or willful or wanton disregard for human rights, safety, and

22

property after the benefit of discovery. See Johnson v. Cannon, 947 F. Supp. 1567, 1574 (M.D. Fla. 1996)("The fact that a deputy 'may have intentionally abused his office does not in itself shield the sheriff from liability.' It is up to the fact-finder to determine whether bad faith, malicious purpose, or willful or wanton disregard of human rights, safety, or property was present." (citing McGhee v. Volusia Cty., 679 So. 2d 729, 733 (Fla. 1996))). While Tompkins-Holmes alleges that Deputy Virden intentionally shot him, it is not clear from the Complaint that Deputy Virden shot Tompkins-Holmes with malicious purpose such that Sheriff Gualtieri is entitled to sovereign immunity at this stage. Therefore, the battery claim will not be dismissed.

For the negligence claim, Count V, Sheriff Gualtieri argues that Tompkins-Holmes has not pled a cognizable claim because none of the duties listed by Tompkins-Holmes run to the Sheriff. (Doc. # 10 at 14). These duties include:

> (a) To refrain from using excessive and/or unreasonable force against Tompkins-Holmes;
>
> (b) To refrain from unreasonably creating the situation where force is used;
>
> (c) To refrain from abusing their authority granted them by law;
>
> (d) To use tactics and force appropriate for a given situation where an individual, such as

> Tompkins-Holmes, does not possess a weapon and poses no threat of harm or ability to flee;
>
> (e)  To refrain from violating Tompkins-Holmes's rights guaranteed by the United States Constitution, and as otherwise protected by law; [and]
>
> (f)  To refrain from threatening and/or brandishing a weapon in a manner that permits it to be negligently discharged.

(Doc. # 2 at ¶ 105).

Tompkins-Holmes persuasively responds that Sheriff Gualtieri did owe a cognizable duty to Tompkins-Holmes, because Tompkins-Holmes was in Deputy Virden's custody and foreseeably at risk of harm at the time of the shooting. See Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989)("Under these circumstances, petitioner clearly was sufficiently restrained of liberty to be in the 'custody' or control of the police. Thus, the officers owed him and his family a duty of care arising under the common law of Florida."); see also Lewis v. City of St. Petersburg, 260 F.3d 1260, 1263 (11th Cir. 2001)("[R]eiterating Florida law, when a defendant, including a police officer, by his or her conduct creates a foreseeable zone of risk, the law imposes a duty owed by the defendant to all individuals within the zone to act with reasonable care.").

Next, Sheriff Gualtieri argues that this Count should be dismissed because it is indistinguishable from a "negligent use of excessive force" claim. Florida law does not recognize the negligent use of excessive force as a cause of action. See Secondo v. Campbell, 327 F. App'x 126, 131 (11th Cir. 2009)("Because the Florida courts have conclusively established that a cause of action for the negligent use of excessive force is an oxymoron, Secondo's state law negligence argument must fail."); City of Miami v. Sanders, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). A negligence claim "must pertain to something other than the actual application of force during the course of the arrest." City of Miami, 672 So. 2d at 48. Many of the duties enumerated by Tompkins-Holmes relate to the manner in which Deputy Virden forcibly manhandled, handcuffed, and shot him. Thus, those duties involve the same conduct as a battery claim. Id. at 47 ("The problem with Sanders' [negligence] legal theory is that a suit for a police officer's use of excessive force necessarily involves the intentional tort of battery.").

Still, "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force." Id. at 48. And, "Florida law [] clearly recognizes a cause of action

25

for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim." <u>Lewis</u>, 260 F.3d at 1263. At least one duty enumerated by Tompkins-Holmes — the duty "[t]o refrain from threatening and/or brandishing a weapon in a manner that permits it to be negligently discharged" — supports a cognizable claim based on the negligent handling of a firearm. Indeed, Tompkins-Holmes described Deputy Randall's theory that "Deputy Virden had mistaken his previously drawn Taser for his pistol" and had intended to Taser Tompkins-Holmes, rather than shoot him. (Doc. # 2 at ¶¶ 58-59). As such, a negligence claim could be brought against Deputy Virden, and that claim can be brought against Sheriff Gualtieri vicariously. Therefore, Count V survives dismissal.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Sheriff Robert Gualtieri's Motion to Dismiss (Doc. # 10) is **DENIED.**

(2)   Defendant Deputy Timothy Virden's Motion to Dismiss or for More Definite Statement (Doc. # 11) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>8th</u>

day of February, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE