UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DYLAN TOMPKINS-HOLMES,

    Plaintiff,

v.                                    Case No. 8:17-cv-52-T-33AEP

ROBERT GUALTIERI, in his
Capacity as Sheriff of Pinellas
County, Florida, and TIMOTHY
VIRDEN, individually,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Deputy Timothy Virden's Motion to Stay (Doc. # 13), filed on January 18, 2017, and Sheriff Robert Gualtieri's Motion to Stay or Bifurcate (Doc. # 17), filed on January 31, 2017. Plaintiff Dylan Tompkins-Holmes filed responses on February 1 and 14, 2017. (Doc. ## 19, 24). For the reasons that follow, the Motions are denied.

**I.  Background**

Tompkins-Holmes alleges that Deputy Virden used excessive force against him on December 30, 2015, during a traffic stop in which Tompkins-Holmes was a passenger of the vehicle stopped by deputies. (Doc. # 2). During the traffic

1

stop, Deputy Virden ordered Tompkins-Holmes from the vehicle, threatened him with a Taser, and shot Tompkins-Holmes twice while Tompkins-Holmes's hands were handcuffed behind his back. Following the shooting, on January 28, 2016, the State Attorney charged Deputy Virden with attempted manslaughter. (Id. at ¶ 30). The criminal proceedings are ongoing.

Tompkins-Holmes filed this action in state court on December 8, 2016, bringing an excessive force claim under 42 U.S.C. § 1983 against Deputy Virden, § 1983 claims against Sheriff Gualtieri in his official capacity for maintaining a custom or practice of excessive force and inadequately training deputies, and vicarious battery and negligence claims against Sheriff Gualtieri in his official capacity. (Doc. # 2). Defendants removed the case to this Court on January 6, 2017. (Doc. # 1).

On January 18, 2017, Deputy Virden filed his Motion to Stay, requesting a stay because he would have to invoke his Fifth Amendment privilege against self-incrimination in this civil case to prevent incriminating himself in the criminal proceedings, thereby hampering his defense in the civil case. (Doc. # 13). Soon thereafter, Sheriff Gualtieri filed his Motion to Stay or Bifurcate, requesting that the case be stayed for the same reason or alternatively bifurcated so

that discovery regarding the claims against the Sheriff would not proceed until the claims against Deputy Virden have been resolved. (Doc. # 17). Tompkins-Holmes filed responses in opposition to both Motions. (Doc. ## 19, 24). The Motions are ripe for review.

II. **Discussion**

   A. **Stay**

"A court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.'" United States v. Lot 5, Fox Grove, Alachua Cty., Fla., 23 F.3d 359, 364 (11th Cir. 1994)(citing United States v. Kordel, 397 U.S. 1, 12-13 & n.27 (1970)). "The [F]ifth [A]mendment privilege against self-incrimination permits a person 'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in the future criminal proceedings.'" Erwin v. Price, 778 F.2d 668, 669 (11th Cir. 1985)(quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).

"However, the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." S.E.C. v. Wright, 261 F. App'x 259, 262-63 (11th Cir. 2008). To "trigger [the exception for 'special

3

circumstance'], the invocation of the [Fifth Amendment] privilege must result in an adverse judgment, not merely the loss of '[the] most effective defense.' Stated plainly, the rule applies when the invocation of the privilege would result in 'automatic entry of summary judgment.'" <u>United States v. Premises Located at Route 13</u>, 946 F.2d 749, 756 (11th Cir. 1991).

In determining whether special circumstances exist, the Court looks to:

> "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest."

<u>Investments v. Rothstein</u>, No. 10-60786-Civ, 2011 WL 2530945, at *1 (S.D. Fla. June 24, 2011)(quoting <u>Yeomans v. Forster & Howell, Inc.</u>, No. 09-00488, 2009 WL 2960387, at *1 (M.D. Ala. Sept. 10, 2009); <u>see also</u> <u>Whitaker v. Miami-Dade Cty.</u>, No. 13-24450-CIV-LENARD/GOODMAN, 2014 WL 12513590, at *2-5 (S.D. Fla. Apr. 23, 2014)(declining to stay § 1983 case pending criminal investigation of officers after analyzing the six factors).

Here, Deputy Virden has been charged with attempted manslaughter, and the criminal proceedings have been underway for over a year, which weighs in favor of a stay. (Doc. # 17-1). Also, the Court finds that there is a significant overlap between Tompkins-Holmes's civil claims and the criminal case against Deputy Virden, as both arise out of the shooting and call into question the propriety of Deputy Virden's use of force. See Love v. City of Lanett, No. 3:09-cv-622-MEF, 2009 WL 2525371, at *2 (M.D. Ala. Aug. 17, 2009)("'[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay.'" (quoting Dominguez v. Hartford Fin. Servs., 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008))).

Nevertheless, the factual overlap between the cases does not mean that there is a significant overlap in the legal analysis that will be used to resolve the criminal charge and civil claim. As Tompkins-Holmes emphasizes, the § 1983 excessive force claim against Deputy Virden will be analyzed from the perspective of a reasonable officer in Deputy Virden's situation — an objective standard. (Doc. # 19 at 4); see also Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008)("In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by

5

the Fourth Amendment's 'objective reasonableness' standard."
(citations omitted)). Thus, determining Deputy Virden's
subjective intent when he shot Tompkins-Holmes, which will be
important in the criminal case, will be unnecessary to resolve
the § 1983 claim. So, deposition testimony from Deputy Virden
regarding his intentions and mental state during the incident
is also not required for Deputy Virden's defense. The Court
finds that this factor only slightly weighs in favor of a
stay.

To be sure, Deputy Virden would be personally
disadvantaged by proceeding in the civil action because he
would be unable to engage fully in discovery. Because the
criminal case is active, Deputy Virden indicates in his Motion
that he will invoke his Fifth Amendment right against self-
incrimination during discovery in the civil case to prevent
those statements from being used against him in the criminal
proceedings. (Doc. # 13 at 2-3). Still, Deputy Virden's
invocation of his Fifth Amendment rights will not necessitate
an adverse judgment, as his actions will be judged from the
perspective of a reasonable officer and there are other
witnesses and an audio recording of the shooting available.
(Doc. # 19 at 4-5); see Mitchell v. Hunt, No. 8:15-cv-2603-
T-23TGW, 2016 WL 7396670, at *1 (M.D. Fla. Feb. 10,

2016)(denying motion to stay in civil case with parallel criminal proceedings where "the motion fail[ed] to explain why the defendants cannot rely on other testimony or evidence" if they invoked their privilege against self-incrimination). Additionally, Tompkins-Holmes expresses willingness to compromise on how to proceed with discovery, in order to accommodate Deputy Virden's concerns if the case is not stayed. (Doc. # 19 at 2; Doc. # 24 at 2). Thus, this factor is neutral or only weighs slightly in favor of a stay.

And, while Deputy Virden would be prejudiced if the case is not stayed, Tompkins-Holmes would be prejudiced by a stay of the case. Tompkins-Holmes is concerned about the loss of evidence and fading memories of witnesses. (Doc. # 24 at 6-7); see Whitaker, 2014 WL 12513590, at *3 ("Plaintiffs' concerns about witnesses' fading memories and the disappearance of evidence are legitimate concerns, particularly where, as here, the incident occurred over fifteen months ago."). Additionally, "the Court takes seriously [Tompkins-Holmes's] right to proceed with [his] claims." Id. Thus, this factor weighs heavily against a stay.

Regarding the interest of the courts and the public interest, Sheriff Gualtieri argues that both interests weigh in favor of a stay because "civil discovery in this case [will

have] the effect of compromising the prosecution of the criminal case" and squander judicial resources with proliferating litigation. (Doc. # 17 at 8-9). Sheriff Gualtieri asserts that resolution of the criminal case would clarify the issues remaining in this case — about the legality of Deputy Virden's use of force — and so a stay would promote judicial economy. (Id. at 8). Also, Sheriff Gualtieri insists that Tompkins-Holmes may seek discovery of information from Deputy Virden, such as psychological and medical records, that the state would not be able to obtain, thereby affecting the integrity of the criminal case. (Id.); cf. Eastwood Enters., LLC v. Farha, No. 8:07-cv-1940-T-33EAJ, 2010 WL 2836719, at *2 (M.D. Fla. July 19, 2010)(staying civil case for 150 days at request of the intervener United States to protect the integrity of a pending related criminal proceeding that could be threatened by "the acknowledged use of civil discovery to combat the criminal investigation and future prosecution").

But, Tompkins-Holmes correctly notes that the special circumstance warranting a stay in the case cited by Sheriff Gualtieri, Eastwood Enterprises, was the government's third-party request in a civil case between private parties that discovery be stayed to prevent the premature disclosure of

8

government witnesses and information from its criminal case — a circumstance not present here. (Doc. # 24 at 5); Eastwood Enters., LLC, 2010 WL 2836719, at *2. Rather, the concern here is that Tompkins-Holmes may through civil discovery obtain evidence that the government would not have been able to acquire in its criminal case against Deputy Virden. Thus, the government's efficient prosecution of criminal cases, which is a legitimate public interest, is not significantly affected. And, the Court agrees that concerns over civil discovery potentially compromising Deputy Virden's defense in the criminal case are better addressed by a tailored discovery plan than by a stay.

Additionally, both the public and the Court have an interest in the expeditious resolution of civil claims for constitutional violations, which would not be served by staying the case until whenever the criminal proceedings resolve. Cf. Pellegrino v. Wengert, 147 F. Supp. 3d 1379, 1383 (S.D. Fla. 2015)("Given the tentative nature of the criminal investigation, it is against the public interest to grant a stay that could last indefinitely."). Therefore, the Court finds that these two factors also weigh against staying the case.

Weighing all the factors, the Court determines that the circumstances of this case do not warrant a stay. As discussed further below, the parties will have an opportunity to craft a discovery plan suitable to all.

**B.     Bifurcation**

Sheriff Gualtieri requests that, if the Court declines to stay the case, that the claims against the Sheriff be bifurcated from the claim against Deputy Virden and stayed pending resolution of that claim. (Doc. # 17 at 9).

Rule 42(b) of the Federal Rules of Civil Procedure permits the Court to separate or bifurcate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings, and the resolution of those proceedings, before it. Treece v. Hochstetler, 213 F.3d 360, 365 (7th Cir. 2000). In deciding whether to bifurcate, the Court should consider the convenience of bifurcation, judicial economy, and the risk of prejudice. See Alexander v. Fulton Cty., 207 F.3d 1303, 1324-25 (11th Cir. 2000), overruled on other grounds, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). The decision to bifurcate is committed to the Court's sound discretion. Harrington v. Cleburne Cty. Bd. of Educ., 251 F.3d 935, 938 (11th Cir. 2001)(noting that Rule 42(b) "confers broad discretion on the district court in this

area, permitting bifurcation merely 'in furtherance of convenience.' This is not a high standard . . .").

As the claims against Sheriff Gualtieri include Monell claims, as well as vicarious battery and negligence claims, Sheriff Gualtieri asserts that bifurcation would be beneficial in this case. Discovery regarding the Sheriff's customs and practices will be more wide-ranging than discovery regarding the shooting of Tompkins-Holmes alone, and so Sheriff Gualtieri feels it would be more efficient to resolve the individual claim against Deputy Virden before litigating the claims against Sheriff Gualtieri. (Doc. # 17 at 10-11); see Foltz v. City of Largo, No. 8:10-cv-759-T-24EAJ, 2011 WL 1690010, at *2 (M.D. Fla. May 3, 2011)(noting that "[c]ourts have found that bifurcation is warranted in order to sever a Monell claim against a municipality from claims against individual police officers" and that, if the jury finds in favor of the officer on the individual § 1983 claim, "such a finding would be dispositive of, and preclude, Plaintiff's Monell claim" (citations omitted)).

Sheriff Gualtieri also points out the potential for prejudice to Deputy Virden if the claims against the Sheriff, which will require evidence of many different wrongful acts, are tried along with the claim against Deputy Virden. (Doc.

# 17 at 10); see Foltz, 2011 WL 1690010, at *2 ("In concluding that bifurcation was warranted, courts have noted that severance of the Monell claim eliminates the potential unfair prejudice to an officer that can occur from the plaintiff's introduction of an officer's prior wrongful acts in order to establish a Monell claim.").

But, as Tompkins-Holmes notes, while Sheriff Gualtieri asserts that there is danger of prejudice to Deputy Virden if the case is not bifurcated, Deputy Virden does not seem to share that concern — he has not moved to bifurcate the case nor claimed that he will be prejudiced if bifurcation does not occur. (Doc. # 24 at 8). Additionally, the battery and negligence claims brought against Sheriff Gualtieri vicariously are entirely based on Deputy Virden's actions on the night of the shooting, unlike the Monell claims. Thus, Tompkins-Holmes argues that it is more efficient to resolve these claims at the same time as the excessive force claim against Deputy Virden. (Id. at 10). Finally, Tompkins-Holmes states that bifurcation "would create a financial hardship [for him], by requiring two separate trials over the course of a year." (Id. at 9).

Upon consideration of these competing interests, the Court does not believe that bifurcating the claims against

12

the Sheriff would increase convenience or judicial economy sufficiently to warrant bifurcation. Therefore, Sheriff Gualtieri's alternative Motion to Bifurcate is denied.

## III. Conclusion

The Court has determined that neither a stay pending the criminal proceedings against Deputy Virden, nor bifurcation of the claims against Sheriff Gualtieri, are appropriate. Therefore, both Motions are denied.

Although the Court denies both Motions, Sheriff Gualtieri and Deputy Virden raise reasonable concerns about the best way to handle discovery given the ongoing criminal proceedings. Indeed, Tompkins-Holmes acknowledges the legitimacy of these concerns and indicates his willingness to craft a discovery plan that takes into account Deputy Virden's privilege against self-incrimination. (Doc. # 19 at 2; Doc. # 24 at 2). Accordingly, the parties are directed to attend a hearing before the Honorable Anthony E. Porcelli, United States Magistrate Judge, to be scheduled by Judge Porcelli via separate notice. At the hearing, the parties should be prepared to discuss possible solutions to their discovery concerns.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Defendant Deputy Timothy Virden's Motion to Stay (Doc. # 13) is **DENIED**.

(2) Defendant Sheriff Robert Gualtieri's Motion to Stay or Bifurcate (Doc. # 17) is **DENIED**.

(3) The parties are directed to attend a hearing before the Honorable Anthony E. Porcelli, United States Magistrate Judge, to be scheduled by Judge Porcelli via separate notice, during which the parties may craft a discovery plan in light of the concerns raised by Deputy Virden's pending criminal charges.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of February, 2017.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE