```
UNITED STATES DISTRICT COURT
  MIDDLE DISTRICT OF FLORIDA
        TAMPA DIVISION
```

DYLAN TOMPKINS-HOLMES,

    Plaintiff,

v.                                      Case No. 8:17-cv-52-T-33AEP

ROBERT GUALTIERI, in his
Capacity as Sheriff of Pinellas
County, Florida, and TIMOTHY
VIRDEN, individually,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Deputy Timothy Virden's Motion to Reconsider the Court's Order on the Motion to Stay dated February 16, 2017 (Doc. # 38), filed on June 14, 2017, and Sheriff Robert Gualtieri's Motion to Reconsider, or alternatively, to Lift Protection of Defendant Virden from Discovery (Doc. # 39), filed on June 28, 2017. Tompkins-Holmes filed responses to both motions (Doc. ## 40, 42), and Deputy Virden responded in opposition to Sheriff Gualtieri's Motion, (Doc. # 41). For the reasons that follow, the Motions are denied.

1

I.  **Background**

Tompkins-Holmes alleges that Deputy Virden used excessive force against him on December 30, 2015, during a traffic stop in which Tompkins-Holmes was a passenger in the vehicle stopped by deputies. (Doc. # 2). During the traffic stop, Deputy Virden ordered Tompkins-Holmes from the vehicle, threatened him with a Taser, and shot Tompkins-Holmes twice while Tompkins-Holmes's hands were handcuffed behind his back. Following the shooting, on January 28, 2016, the State Attorney charged Deputy Virden with attempted manslaughter. (Id. at ¶ 30). The criminal proceedings are ongoing.

Tompkins-Holmes filed this action in state court on December 8, 2016, bringing an excessive force claim under 42 U.S.C. § 1983 against Deputy Virden, § 1983 claims against Sheriff Gualtieri in his official capacity for maintaining a custom or practice of excessive force and inadequately training deputies, and vicarious battery and negligence claims against Sheriff Gualtieri in his official capacity. (Doc. # 2). Defendants removed the case to this Court on January 6, 2017. (Doc. # 1).

On January 18, 2017, Deputy Virden filed his motion to stay, requesting a stay because he would have to invoke his Fifth Amendment privilege against self-incrimination in this

civil case to prevent incriminating himself in the criminal proceedings, thereby hampering his defense in the civil case. (Doc. # 13). Soon thereafter, Sheriff Gualtieri filed his motion to stay or bifurcate. (Doc. # 17). Tompkins-Holmes responded to both motions. (Doc. ## 19, 24).

On February 16, 2017, the Court denied the motions and noted "Deputy Virden's invocation of his Fifth Amendment rights will not necessitate an adverse judgment, as his actions will be judged from the perspective of a reasonable officer and there are other witnesses and an audio recording of the shooting available." (Doc. # 25 at 6). Instead, that Order directed the parties to attend a hearing before the Honorable Anthony E. Porcelli, United States Magistrate Judge, to "craft a discovery plan that takes into account Deputy Virden's privilege against self-incrimination." (Id. at 13).

After holding a discovery conference with the parties, Judge Porcelli entered a discovery order, stating "all discovery to be served upon [Deputy] Virden shall not commence until August 18, 2017," but allowing "all other discovery [to] commence forthwith." (Doc. # 35 at 1). Furthermore, Judge Porcelli advised: "Should any discovery disputes arise relating to Virden's Fifth Amendment protections, the parties

3

are directed to first meet and confer, and if unable to resolve the dispute, then telephonically contact the undersigned's chambers to schedule a telephonic hearing to resolve the dispute." (Id.).

Subsequently, on June 14, 2017, Tompkins-Holmes filed the Motion to Reconsider the Order denying the stay. (Doc. # 38). Sheriff Gualtieri then filed his Motion to Reconsider, or alternatively, to Lift Protection of Defendant Virden from Discovery. (Doc. # 39). Tompkins-Holmes filed responses to both motions (Doc. ## 40, 42), and Deputy Virden responded in opposition to Sheriff Gualtieri's Motion (Doc. # 41). The Motions are ripe for review.

## II. Legal Standard

### A. Motion for Reconsideration

Federal Rules of Civil Procedure 59(e) and 60 govern motions for reconsideration. Ludwig v. Liberty Mutual Fire Ins. Co., Case No. 8:03-cv-2378-T-17MAP, 2005 WL 1053691, at *2 (M.D. Fla. Mar. 30, 2005). The time when the party files the motion determines whether the motion will be evaluated under Rule 59(e) or Rule 60. Id. A Rule 59(e) motion must be filed within 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). Motions filed after the 28-day period will be decided under Federal Rule of Civil Procedure 60(b).

4

As stated in <u>Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.</u>, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." <u>Lamar Adver. of Mobile, Inc. v. City of Lakeland</u>, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

Likewise, Rule 60(b), Fed. R. Civ. P., is available to relieve a party from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud . . . misrepresentation, or misconduct by the opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied . . . ; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Whether asserted under either Rule 59 or 60, "a motion for reconsideration is not the proper forum for the party to

vent dissatisfaction with the Court's reasoning." Ludwig, 2005 WL 1053691, at *4 (internal citation omitted).

### B. Motion to Stay Pending Resolution Of Criminal Proceedings

"A court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.'" United States v. Lot 5, Fox Grove, Alachua Cty., Fla., 23 F.3d 359, 364 (11th Cir. 1994)(citing United States v. Kordel, 397 U.S. 1, 12-13 & n.27 (1970)). "The [F]ifth [A]mendment privilege against self-incrimination permits a person 'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in the future criminal proceedings.'" Erwin v. Price, 778 F.2d 668, 669 (11th Cir. 1985)(quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).

"However, the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." S.E.C. v. Wright, 261 F. App'x 259, 262-63 (11th Cir. 2008). To "trigger [the exception for 'special circumstances'], the invocation of the [Fifth Amendment] privilege must result in an adverse judgment, not merely the loss of '[the] most effective defense.' Stated plainly, the

rule applies when the invocation of the privilege would result in 'automatic entry of summary judgment.'" <u>United States v. Premises Located at Route 13</u>, 946 F.2d 749, 756 (11th Cir. 1991).

If a stay is not granted, "the court may draw adverse inferences against a party that invokes the Fifth Amendment." <u>Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.</u>, 561 F.3d 1298, 1304 (11th Cir. 2009). Indeed, "[t]he decision to invoke the Fifth Amendment does not have to be consequence-free." <u>Id.</u> Still, the possible negative inference alone would not result in automatic entry of summary because "[t]he negative inference, if any, to be drawn from the assertion of the Fifth Amendment does not substitute for evidence needed to meet the burden of production." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1580 (11th Cir. 1991); <u>see also</u> <u>S.E.C. v. Scherm</u>, 854 F. Supp. 900, 904 (N.D. Ga. 1993)("This adverse inference, however, is insufficient by itself to allow summary judgment to be entered against a party."). "Rather, a party seeking summary judgment must establish independently the elements of the claim within the confines of Federal Rule of Civil Procedure 56." <u>Scherm</u>, 854 F. Supp. at 904-05 (citing <u>Avirgan</u>, 932 F.2d at 1580).

7

### III. Analysis

#### A. Reconsideration of Stay Order Denied

Deputy Virden and Sheriff Gualtieri insist reconsideration of the Court's previous Order is warranted because new information has been uncovered in discovery. (Doc. # 38 at 3-4; Doc. # 39 at 4). While Tompkins-Holmes represented in his response to the motion to stay that there would be other witnesses to the shooting as well as an audio recording, Deputy Virden now asserts that "additional depositions have been taken and it is clear now that there were no witnesses to the shooting incident involving Deputy Virden and [Tompkins-Holmes] other than Deputy Virden and [Tompkins-Holmes]." (Doc. # 38 at 4).

Yet, while they assert new evidence acquired through discovery reveals there were no other witnesses, neither Deputy Virden nor Sheriff Gualtieri has pointed to any specific new discovery. Deputy Virden simply notes that many depositions have been taken in the criminal case. But, the Eleventh Circuit has held that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the

8

pendency of the motion." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997).

As Tompkins-Holmes points out, of the thirty depositions taken in the criminal case, only four were taken after the Court entered its Order denying the motion to stay. (Doc. # 40 at 5; Doc. # 40-1). Indeed, according to Tompkins-Holmes, the depositions taken before the Court's previous Order "include all of the Sheriff's deputies who were at the scene on the night of the shooting, the driver of the vehicle in which Tompkins-Holmes was a passenger, and the lead Internal Affairs investigators for the Pinellas County Sheriff's Office." (Doc. # 40 at 6).

Deputy Virden has not stated which depositions led to the realization that there were no other witnesses to the shooting or the dates of those depositions, nor has he provided portions of those depositions for the Court's review. And, for depositions that may have been taken before entry of the Order denying the stay, Deputy Virden has not explained why he could not have addressed those depositions in his original motion to stay. Therefore, Deputy Virden's contention that new evidence now warrants a stay is unpersuasive.

Sheriff Gualtieri's similar assertions, which parrot Deputy Virden's allegations of new but unspecified deposition testimony, are equally unpersuasive. As to Sheriff Gualtieri's discussion of the audio recording, he is incorrect that the audio recording constitutes new evidence warranting reconsideration of the Court's Order. From the beginning of this action the audio recording has been discussed — the Complaint describes the audio recording's contents in detail. (Doc. # 2 at 11, 17-18). Furthermore, as Tompkins-Holmes points out, "the depositions taken in the criminal case discussing the audio recording were taken in the criminal case well before Gualtieri's initial motion to stay and the Court's Order." (Doc. # 42 at 5). Thus, Sheriff Gualtieri has not persuaded the Court that the audio recording presents new evidence meriting reconsideration.

Additionally, Tompkins-Holmes emphasizes that the excessive force claim against Deputy Virden will be analyzed using the objective standard of a reasonable officer in Deputy Virden's position so, "if Virden does not testify in the civil proceeding, this Court would not be required to enter summary judgment against him." (Doc. # 40 at 8). The Court agrees that this weighs heavily against a stay because, as noted in the previous Order, "determining Deputy Virden's subjective

10

intent when he shot Tompkins-Holmes . . . will be unnecessary to resolve the § 1983 claim." (Doc. # 25 at 5).

And, although Deputy Virden states there are no witnesses to the shooting itself, there are numerous witnesses — including the other deputies and Tompkins-Holmes's companion — to the events immediately before and after the shooting. (Doc. # 40 at 7). These events include Deputy Virden and Tompkins-Holmes's interaction before the shooting and Deputy Virden's behavior and statements to other deputies following the shooting. Deputy Virden's own statements during his initial interview with the investigators from the Sheriff's Office are also available, allowing insight into Deputy Virden's "version of events." (Id. at 8).

Furthermore, Deputy Virden does not explain why the audio recording does not provide accurate evidence of how the shooting occurred. He merely asserts "the audio recording does not reflect the actions of either Deputy Virden or Plaintiff Tompkins-Holmes at the time of the shooting." (Doc. # 38 at 2-3). But, according to the Compliant, the audio recording captured the verbal exchange between Deputy Virden and Tompkins-Holmes, followed by the sound of two gunshots, Tompkins-Holmes's scream, then Deputy Virden's saying "oh shit," and speaking to Deputy Randall. (Doc. # 2 at 11, 17-

11

18). While Deputy Virden would prefer to stay the case until the criminal matter is concluded so he may testify and avoid a negative inference drawn from his invocation of the Fifth Amendment privilege, he is incorrect that the only evidence concerning how the shooting occurred could be the testimony of Tompkins-Holmes and himself.

Therefore, Defendants still have not shown that Deputy Virden's invocation of his Fifth Amendment privilege would result in an automatic adverse judgment, which would necessitate a stay. See Mitchell v. Hunt, No. 8:15-cv-2603-T-23TGW, 2016 WL 7396670, at *1 (M.D. Fla. Feb. 10, 2016)("The motion fails to demonstrate that invoking the Fifth Amendment privilege will automatically result in summary judgment against the defendants. . . . [A]lthough Mary Catherine Hunt's testimony might be the defendants' 'most effective defense,' . . . the motion fails to explain why the defendants cannot rely on other testimony or evidence." (citation omitted)). Even if Deputy Virden's deposition is ultimately taken and he invokes his Fifth Amendment privilege, the Court emphasizes that Tompkins-Holmes still bears the burden of proving his case and any negative inference that might be drawn against Deputy Virden will not necessitate an adverse judgment against him. Scherm, 854 F. Supp. at 904-05.

The Court understands Deputy Virden and Sheriff Gualtieri's concerns and preference for a stay, but the same considerations that weighed heavily against a stay before remain. Deputy Virden and Sheriff Gualtieri have not presented any specific new evidence to alter that balance.

### B. The Limitations on Discovery Will Remain in Place

Alternatively, if a stay is not granted, Sheriff Gualtieri requests that the limitations placed on discovery for Deputy Virden's protection be removed. (Doc. # 39 at 7). According to Sheriff Gualtieri,

> the present posture of this case — effectively staying it as to Virden but no one else — does not resolve any of the issues [related to discovery], prejudices [] Sheriff [Gualtieri], and does not address the ultimate issue that, one way or another, before this civil case can be concluded at summary judgment or trial, discovery including deposition testimony from Virden will have to be had.

(Id.).

Both Tompkins-Holmes and Deputy Virden oppose Sheriff Gualtieri's request to lift the discovery restrictions. Deputy Virden "oppose[s] the lifting of such restrictions as they are the only restrictions currently in place to guard against violating Deputy Virden's Fifth Amendment protections . . . ." (Doc. # 41 at 3). And Tompkins-Holmes notes Sheriff Gualtieri did not object or seek review of the order

13

suspending discovery as to Deputy Virden. (Doc. # 42 at 3). He also emphasizes that "Judge Porcelli was very clear at the two previous conferences with the parties that he was open and available to conduct phone conferences on any discovery issues that the parties may face." (Id.).

The Court agrees with Deputy Virden and Tompkins-Holmes and sees no reason to do away with the discovery plan crafted to protect Deputy Virden's Fifth Amendment privilege during the criminal case. Lifting all discovery restrictions is not necessary for this case to proceed. If Sheriff Gualtieri has specific issues with the discovery plan, he can raise them before Judge Porcelli as needed.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Deputy Timothy Virden's Motion to Reconsider (Doc. # 38) is **DENIED.**

(2) Defendant Sheriff Robert Gualtieri's Motion for Reconsideration, or alternatively, to Lift Protection of Defendant Virden from Discovery (Doc. # 39) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of July, 2017.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE