UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DYLAN TOMPKINS-HOLMES,

       Plaintiff,

v.                            Case No. 8:17-cv-52-T-33AEP

ROBERT GUALTIERI, in his
Capacity as Sheriff of Pinellas
County, Florida, and TIMOTHY
VIRDEN, individually,

       Defendants.

_____/

## ORDER

     This matter comes before the Court pursuant to Deputy
Timothy Virden's Motion to Exclude Certain Opinion Testimony
of Kami Chavis (Doc. # 86), filed on December 13, 2017.
Plaintiff Dylan Tompkins-Holmes responded on January 12,
2018. (Doc. # 95). Virden replied on January 26, 2018. (Doc.
# 105). For the reasons that follow, the Motion is granted
and Professor Chavis's expert testimony is excluded in its
entirety.

## I. Legal Standard

     Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion or

otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. <u>See</u> <u>Id.</u> at 589–90. Such <u>Daubert</u> analysis also applies to non-scientific expert testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2)

the methodology by which the expert reaches his
conclusions is sufficiently reliable as determined
by the sort of inquiry mandated in <u>Daubert</u>; and (3)
the testimony assists the trier of fact, through
the application of scientific, technical, or
specialized expertise, to understand the evidence
or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. <u>Id.</u> The Court will address each aspect of the three-part inquiry below.

## II. **Analysis**

This is a 42 U.S.C. § 1983 excessive force case involving the shooting of Tompkins-Holmes by Deputy Virden. The excessive force claim against Deputy Virden has survived summary judgment. (Doc. # 108). The Court granted summary judgment for Sheriff Gualtieri on the municipal liability § 1983 claims (Doc. # 113), and Sheriff Gualtieri settled the remaining vicarious liability battery and negligence claims against him with Tompkins-Holmes. (Doc. # 121). Therefore, only the excessive force claim against Deputy Virden survives.

Here, Tompkins-Holmes disclosed Professor Chavis's expert report on September 25, 2017, the day of the expert report deadline. (Doc. # 87 at 1; Doc. # 49). After providing a narrative of Tompkins-Holmes's shooting, Professor Chavis's

expert report primarily discusses Sheriff Gualtieri's policies and Deputy Virden's prior uses of force as an example of Sheriff Gualtieri's alleged failure to train and supervise on the use of force. The report concludes:

> In my opinion, the failure to identify and retrain or reassign Deputy Virden demonstrates inadequate supervision and oversight. Similarly, given the widespread use of body-worn cameras and policies involving the retention of video and audio evidence in officer-involved shootings, the failure to retain the video or equip the deputies with body-worn cameras does not meet widely accepted best practices of modern law-enforcement agencies.

(Doc. # 87-3 at 4).

Professor Chavis was deposed on November 10, 2017. (Doc. # 87-1). After Sheriff Gualtieri and Deputy Virden moved to exclude Professor Chavis's testimony, Professor Chavis executed an affidavit on January 11, 2018, which Tompkins-Holmes submitted with his response in opposition to Deputy Virden's Daubert Motion. (Doc. # 95-1). Because the expert report and discovery deadlines had both passed when the affidavit was prepared, the affidavit is untimely and will not be considered by the Court to the extent it contains "opinions beyond the scope of those [Professor Chavis] wrote in [her] initial report or those to which [she] testified in [her] subsequent deposition." Abrams v. Ciba Specialty Chemicals Corp., No. CIV.A. 08-0068-WS-B, 2010 WL 779283, at

*7 (S.D. Ala. Mar. 2, 2010)(excluding an expert's new affidavit "submitted in the context of hotly contested Daubert motions" where "plaintiffs [were] prejudiced because they have not been able to depose [the expert] about these matters" after the discovery deadline passed).

Deputy Virden asks to exclude any testimony by Professor Chavis "as a use of force expert regarding [Deputy Virden's] actions." (Doc. # 105 at 2). He challenges her qualifications, methodology, and helpfulness to the trier of fact.

### A.   Qualifications

The first question under Daubert is whether the proposed expert witness, Professor Chavis, is qualified to testify competently regarding the matters she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012)(quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to

credibility and weight, not admissibility." Id. (citations
and internal quotation marks omitted). The Court is mindful
that its "gatekeeper role under Daubert 'is not intended to
supplant the adversary system or the role of the jury.'" Maiz
v. Virani, 253 F.3d 641, 666 (11th Cir. 2001)(quoting Allison
v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Professor Chavis has never been a law enforcement
officer or received any formal law enforcement training.
(Chavis Dep. Doc. # 87-1 at 206:20-207:15). Rather, after
graduating law school at Harvard, Professor Chavis worked as
an associate at large law firms for a few years, practicing
general litigation and real estate law. (Id. at 203:2-25,
227:17-25). Subsequently, she worked as an Assistant United
States Attorney in Washington, D.C., in the criminal division
for three years. (Id. at 202:8-24; Doc. # 87-4 at 1). Now,
Professor Chavis teaches criminal law and a seminar on "police
and prosecutorial accountability" at Wake Forest University
School of Law, as well as researching and publishing about
police practices and accountability. (Chavis Dep. Doc. # 87-
1 at 10:15-11:25; Doc. # 87-4 at 1-2). She has published
articles on Fourth Amendment violations, police
accountability, and body cameras in various law reviews.
(Doc. # 87-4 at 2-3). Professor Chavis has presented at

numerous academic conferences regarding police accountability and practices, and has come in contact with many law enforcement professionals that way. (Chavis Dep. Doc. # 87-1 at 207:6-23). She once prepared training materials for law enforcement agencies on "anti-bias cultural sensitivity," but not about the use of force specifically. (Id. at 208:4-13). Although this fact does not imply a lack of qualifications, Professor Chavis has never before served as an expert witness in a case. (Id. at 8:12-16); see Health & Sun Research, Inc. v. Australian Gold, LLC, No. 8:12-cv-2319-T-33MAP, 2013 WL 6086457, at *3 (M.D. Fla. Nov. 19, 2013)("The mere fact that [the expert] never has been *retained* as an expert is irrelevant. By that logic, no *witness* could ever qualify as an expert for the first time because that would require being retained *previously* as an expert." (citation omitted)).

Deputy Virden argues Professor Chavis "is not qualified to render an opinion as to excessive use of force." (Doc. # 86 at 9). He emphasizes that Professor Chavis has never been a law enforcement officer, so has never been trained practically on the use of force. Professor Chavis's expert report never explicitly concludes that Deputy Virden used excessive force when he shot Tompkins-Holmes. Deputy Virden also notes Professor Chavis's statement during her

deposition: "I do not believe I'm being proffered in this case as a use of force expert." (Chavis Dep. Doc. # 87-1 at 222:4-8). Professor Chavis went on to say that she "do[es] feel that [she's] able to speak on issues in terms of — like constitutional law and things like that" by virtue of her research on the use of force. (Id. at 222:18-23). Nevertheless, when asked to clarify whether she said the shooting of Tompkins-Holmes was unconstitutional, Professor Chavis again reiterated: "I thought that I said I wasn't making those determinations." (Id. at 223:2-12).

Nevertheless, the Court disagrees with Deputy Virden about Professor Chavis's qualifications. While it is significant that Professor Chavis has never been trained as a law enforcement officer on the use of force, she is a criminal law professor who has published frequently on police accountability and Fourth Amendment violations. True, Professor Chavis averred that she was not serving as a use of force expert during her deposition, so had not made a determination whether the shooting and Deputy Virden's past uses of force were unconstitutional. (Id. at 133:21-135:8, 222:4-223:12, 241:14-243:11). But this important admission goes to the reliability of Professor Chavis's opinion, not whether Professor Chavis is minimally qualified to make that

determination. Indeed, Professor Chavis clarified her admission by asserting that she is familiar with Fourth Amendment excessive force case law and felt able to make determinations about force — she just had not been originally retained to do so. (<u>Id.</u> at 222:18-23, 241:14-242:8). Therefore, Professor Chavis is at least "minimally qualified" to testify about the use of force. <u>Clena Invs., Inc.</u>, 280 F.R.D. at 661.

### B. <u>Reliability</u>

The next question is whether Professor Chavis's methodology is reliable.

> Although an opinion from a non-scientific expert should receive the same level of scrutiny as an opinion from an expert who is a scientist, some types of expert testimony will not naturally rely on anything akin to the scientific method, and thus should be evaluated by other principles pertinent to the particular area of expertise.

<u>Washington v. City of Waldo, Fla.</u>, No. 1:15CV73-MW/GRJ, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016)(citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). Still, "[i]f the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the

facts." <u>United States v. Frazier</u>, 387 F.3d 1244, 1261 (11th Cir. 2004)(citation and internal quotation marks omitted).

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." <u>Id.</u> at 1262 (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, considerations a district court may use in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

<u>Seamon v. Remington Arms Co., LLC</u>, 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other relevant factors into account as well. <u>Id.</u> (citations omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" <u>Id.</u> (citation omitted).

Deputy Virden argues that Professor Chavis's methodology is unreliable. (Doc. # 86 at 9). Professor Chavis's report does not express an opinion on whether the shooting of Tompkins-Holmes was an excessive use of force. And, when asked

whether she was being retained as a use of force expert, Professor Chavis stated that "what you see [in the report is] what I focused on. I focused on the body cameras, the importance of those body cameras as they relate to law enforcement organization culture and as it relates to those uses of force, yes." (Chavis Dep. Doc. # 87-1 at 243:4-11). As mentioned before, Professor Chavis also said that she did "not believe [she was] being proffered in this case as a use of force expert." (Id. at 222:4-8). Professor Chavis clarified that she could opine on whether Deputy Virden used excessive force based on her experience and research, but that was not truly her focus as an expert witness. (Id. at 222:18-23). Still, Professor Chavis did not provide a thorough analysis of whether Deputy Virden used excessive force, nor did she explain how her experience as a law professor and former Assistant U.S. Attorney led her to that conclusion. See Frazier, 387 F.3d at 1261 (stating that a witness relying on his experience must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts").

Furthermore, Professor Chavis's opinion is not reliable concerning Deputy Virden's other prior uses of force.

Professor Chavis addressed Deputy Virden's 58 prior uses of force, which she called a "disturbing pattern," in the context of critiquing Sheriff Gualtieri's training on and supervision over the use of force. (Doc. 87-3 at 1-2). Professor Chavis did not render an opinion in her report or deposition that any of the previous uses of force by Deputy Virden were excessive or violated the Sheriff's use of force policy. (Chavis Dep. Doc. # 87-1 at 134:18-135:8; 150:3-7). She was unaware of how Deputy Virden's uses of force compared to that any other deputy in the Sheriff's Office. (Id. at 49:22-50:7). And Professor Chavis had only reviewed a one-page summary of the use of force reports at the time of her report, having later "glanced through" Deputy Virden's use of force reports a few days before her deposition. (Id. at 51:17-52:20, 65:2-3, 111:9-13). So, to the extent Professor Chavis intended to opine that Deputy Virden's prior uses of force were excessive or showed a propensity for Deputy Virden to use excessive force, those opinions are unreliable and excluded.

In short, Professor Chavis did not develop an opinion in her report or deposition that the shooting or prior uses of force by Deputy Virden were unconstitutional. Nor did she explain how she would have reached those conclusions based on

her experience. Therefore, her methodology is unreliable. The Court agrees that Professor Chavis's opinions on whether Deputy Virden used excessive force when he shot Tompkins-Holmes or during his previous uses of force should be excluded.

### C. **Assistance to Trier of Fact**

Although the Court has concluded that Professor Chavis's testimony on Deputy Virden's uses of force should be excluded as unreliable, the Court will still analyze the third and final element. Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted).

"[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison, 184 F.3d at 1312 (citation omitted). So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care

<u>Corp.</u>, 582 F.3d 1227, 1232 (11th Cir. 2009)(citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262-63 (citation omitted).

Deputy Virden argues that Professor Chavis's testimony will not be useful to the trier of fact for the excessive force claim against him. He emphasizes that Professor Chavis's report dealt with the training and policies of the Sheriff's Office, rather than an assessment of the particular shooting of Tompkins-Holmes. (Doc. # 86 at 6; Doc. # 105 at 1-2). The Court agrees with Deputy Virden.

Again, Professor Chavis's report does not express an opinion on whether the shooting of Tompkins-Holmes was an excessive use of force by Deputy Virden. Nor did Professor Chavis opine that any of Deputy Virden's prior uses of force were excessive. When asked whether she was being retained as a use of force expert, Professor Chavis stated in her deposition: "I do not believe I'm being proffered in this case as a use of force expert." (Chavis Dep. Doc. # 87-1 at 222:4-8). In sum, Professor Chavis was not proffered as an expert on excessive force and did not present an analysis in

her report about whether the shooting or prior uses of force were excessive.

True, she did discuss excessive force in general terms in her deposition, referencing some case law and explaining that force beyond the "force that's necessary to eliminate a threat" or "necessary to effectuate the . . . arrest" is excessive and is judged from the "objectively reasonable standard." (Id. at 50:8-51:4). But this general testimony provides nothing to the fact finder that counsels' closing arguments or the Court's instructions on the law cannot provide. See Frazier, 387 F.3d at 1262-63; see also Knight v. Miami-Dade Cty., No. 09-23462-CIV, 2014 WL 11813876, at *8 (S.D. Fla. May 14, 2014)("[N]either [police practices expert] may testify, reference, or analyze any case law before the jury; the responsibility of instructing the jury on the applicable law is reserved solely for the Court.").

The Court agrees with Deputy Virden that Professor Chavis's "general knowledge of use of force does not assist the trier of fact to understand the evidence or to determine a fact in issue." (Doc. # 86 at 9); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1111 (11th Cir. 2005)("[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual

basis is not adequately explained." (quotation omitted)).

Professor Chavis's testimony regarding excessive force is

excluded.

Furthermore, the remainder of Professor Chavis's

opinions expounded in her report relate only to the § 1983

municipal liability claims against Sheriff Gualtieri, which

do not survive. Her opinions regarding Sheriff Gualtieri's

training and supervision on the use of force, as well as his

failure to retain the video of the shooting and choice not to

implement body-worn cameras, are relevant to whether Sheriff

Gualtieri maintained a practice of tolerating excessive force

or inadequate training and supervision. These opinions,

however, are not helpful on the sole issue remaining: whether

Deputy Virden used excessive force when he shot Tompkins-

Holmes. Therefore, the Court excludes Professor Chavis's

proffered testimony about allegedly inadequate training and

supervision on the use of force, video retention, and body-

worn cameras. See Knight, 2014 WL 11813876, at *6 (holding

that a police practices expert "may not be questioned

regarding the constitutionality of the Miami-Dade Police

Department's policies because those issues are not before the

jury and were previously addressed in our summary judgment

Order" that granted summary judgment for Miami-Dade on the §
1983 claims).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Deputy Timothy Virden's Motion to Exclude
Certain Opinion Testimony of Kami Chavis (Doc. # 86) is
**GRANTED**. Professor Chavis's testimony is excluded in its
entirety.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
30th day of March, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE